No. 06-14-00138-CR
IN THE COURT OF APPEALS
SIXTH APPELLATE DISTRICT OF TEXAS
TEXARKANA, TEXAS

RECEIVED IN
The Court of Appeals
Sixth District

MAY 1 8 2015

Texarkana, Texas
Debra Autrey, Clerk

FILED IN
The Court of Appeals
Sixth District

MAY 1 8 2015

Texarkana, Texas
Debra K. Autrey, Clerk

JAMIE LEE BLEDSOE, APPELLANT

VS.

The STATE OF TEXAS, APPELLEE

APPEALED FROM THE 71st DISTRICT COURT
HARRISON COUNTY, TEXAS
TRIAL COURT NO. 12-0374X

APPELLANT REPLY Brief

APPELLANT
JAMIE LEE BLEDSOE
PRO-SE

# INTRODUCTION FACTS:

ERROR NO: 1 is argue based upon a statute under Penal Code 12.42 (a)(2) that was repealed due to the State Court's repeated erroneous interpretation of the Language.

IN 2011, the Legislature amended the statutes adding Texas Penal Code section 12.425 Threw out the Specific Provision dictating "Penalties for Repeat & Habitual felony offender on trial for State Jail felony."

This Court will clearly see that the Specific Provision includes the Language of Other than a State Jail felony Punishable under Section 12.35(a)

* That was the only Language that they enacted into the statute.

IN the Statute of 12.42 (a)(2) this Court will see that the Legislature fail to include the Language of Other than a State Jail felony ... Punishable under 12.35(a).

The Statute of 12.42 also fail to include the Language of Other than a State Jail felony ... Punishable under 12.35(a) in 12.42. d.

* The Problem we are having today came to error in the Case of State v. WeBB cite as 12 S.W. 3d 808: 2000 Tex. Crim. App, ████; STATE V. White cite as 959 S.W. 2d 375 (Tex. App- fort worth, 1988, Pet. ref'd)
Waits v. State, 56 S.W. 3d 56 (Tex. App- Fort worth, 2001 No Pet.
Campbell v. State, cite as 49 S.W. 3d at 875 (Tex. Crim App. No. 2031-99

IN the Case's of WeBB "supra" and white the State Court attempted to use State Jail felony's that was Previous enhanced to Second degree under 12.42 (a)(2) to further enhance there Conviction under 12.42 (d).

(Page 1)

The Legislature then repealed 12.42(d) and enacted a new version of 12.42(d) with the specific language of _Other than a state jail felony punishable under 12.35(a)_.

The state would then try to take the word "Punishable" under 12.35(a) to mean "Punished" under 12.35(a) and make there law by asserting that "once there convictions was enhanced pursuant to 12.42(a)(2) now enacted to 12.425b, it was no longer "Punishable under 12.35(a)." but was instead "Punishable under 12.42(a)(2).

The State would contend that once the state jail felony was enhanced under 12.42(a)(2) it lost _it's character_ of being a state jail felony under 12.35(a)

This is the same scheme the 71st Judicial Court has used in Bledsoe Case. See _R.R. V 6 of 7 Pg 24-25_ _Line 24-25-1-2._

The only difference in Bledsoe Case opposed to Webb & White is that they are trying to use the previous state jail felony that was enhanced under 12.42(a)(2) with a NOW state jail felony, and are calling it a regular felony, aleging that it lost _it's character._

The Legislature _saw_ this problem in 12.42(a)(2) so they repealed it just like they repealed 12.42(d) and Put the specific language of _Other than a_ _state jail felony Punishable under 12.35a_ in the language of 12.425(b) ("FACTS")

Here we are today with the state abusing there direction by turning a blind eye from the Legislature intent of the Statute.

This assertion made by the State has no merit nor any case law or authority for support.

ISSUE ONE: Appellant's Reply To The State Allegation

The enhancement of Appellant's Punishment do not comply with statutory guidelines enacted by Penal Code 12.425(b)

## STANDARD OF REVIEW

Under the approach to Statutory interpretation, the Court Looks to the literal text of the Statute for its meaning, and ordinarily gives effect to that Plain meaning, unless application of the Statute's Plain language would lead to absurd consequences that the Legislature could not Possibly have intended, or if the Plain language is ambiguous. Boykin v State, 818 sw 2d 782.785 (Tex Crim 1991)

Tex. Penal Code Ann 12.425(b) refers Specifically to the trial of a felony offense Other than a State Jail felony Punishable Under 12.35 (a). Thus, the enhancement is applied with reference to the offense tried.

The facts of the language that was included into the enactment of 12.425(b) was to allow the State to stop making there erroneous interpretation of the use of a State Jail felony that was Previous enhanced Under 12.42 (a)(2) for further enhancements.

Because of the repeated Problems of the State: erroneous interpretation of Penal Code 12.42 (a)(2) the Legislature repealed Penal Code 12.42 (a)(2) because it did not included the Language of Other than a State Jail felony Punishable Under 12.35 (a) and enacted 12.425(b) with the Language Other than a State Jail felony Punishable Under 12.35 (a).

On Page 14 of the State's Brief the State acknowledge that Having sequential State Jail convictions is not enough to meet the requirements of 12.425(b). They even argue there self that the sequential felonies must not have been Punished as State Jail offenses.

The State then try to argue that Cause No. 08. 0177X is not a State Jail felony Punishable Under 12.35 (a), and that it Lost it's Character of being a State Jail felony Under 12.35(a) once it was enhanced. See R.R.V. 6 of 7 Pg 24 Line 24-25 Pg 25

(Page 3)

This frivolous argument made by the State that Cause No 08:0177X Loses its Character is without merit, and the facts is that the State Cites No Case Law or Authority to support their contention.

The State further Contends that the Phrase "Punishable under" as used throughout 12 425(b) refers to the Specific Provision Providing the range of Punishment under which the defendant's Sentence is assessed. That is, although Bledsoe was tried and convicted of a State Jail felony "Punishable under 12.35(a)" on Cause Number 08:0177X" Once his Conviction was enhanced .... Pursuant to 12 425 b, it was No longer "Punishable under 12.35 (a)" but was instead "Punishable under 12.425b "As such, the State asserts that 12 425(b) allows for further Enhancement, with the requisite felony offense.

However, this erroneous interpretation isolates the words "Punishable under" from their Context and fails to differentiate between an enhanced offense and an enhanced Punishment.

The New enactment of 12 425(b) refers Specifically to "the trial of a felony offense other than a State Jail felony Punishable under Section 12 35 (a)". (Emphasis added.) Thus, the enhancement is applied with reference to the offense tried.

In Bledsoe Case, Bledsoe was tried for a non-aggravated State Jail felony, i.e., a state Jail felony Punishable under 12.35 (a) Following his conviction, his Punishment was then enhanced, Pursuant to 12 425 b to the equivalent of a second degree felony, by the State Using a Previous Conviction on Cause No 08:0177X another State Jail felony Punishable under 12.35 (a) with a Non State Jail felony.

Further, if the Legislature had intended that a non-aggravated state Jail felony be eligible for enhancement under 12.425(b) as well as 12.42 (a)(2), is is likely that it would have Clearly said so, as it did with aggravated state Jail felonies.

(Page 4)

## Case Law Authority

Bledsoe Contend's however, that the Texas Penal Code does not Permit a Prior State Jail felony to be Joined with another Prior NON State Jail felony to enhance a non aggravated State Jail felony to the Level of a second degree felony.

In support of his Position, Bledsoe Point to the different terminology used in subsection 12.42 (a)(1) and 12.42 (a)(2) Now enacted to 12.425(b).

In short, Bledsoe Contend that "felony" as it is used in 12.42 (a)(2) Now enacted to 12.425 (b) does not refer to or include a State Jail felony.

In the case of Orrin Waite Cite as 56 S.W.3d 894 [Tex. App. Fort Worth 2001, The Court found him guilty of Possession of a controlled substance, a State Jail felony.

The indictment further alleged that appellant had Previously been Convicted of two offenses, that one of these was itself a State Jail felony, and that these two offenses occurred in Succession.

The Court of Criminal Appeals of Texas remand the case back to the Court of Appeals in Light of there Opinion in Campbell.

In Campbell Cite as 49 S.W.3d 874 [Tex. Crim App 2001 the Court of Criminal Appeal of Texas made it clear that "felonies" as used in Portion of repeat/habitual offender Punishment statute requiring Second-degree felony Punishment upon conviction of State Jail felony with two Prior consecutive "felonies" does not include state Jail felonies; thus, offender who commits only unaggravated State Jail felonies will Never face enhancement beyond a third-degree felony. Prior unaggravated State Jail felony conviction could not be used along with one NON State Jail felony Prior felony conviction to enhance Punishment of defendant convicted of a State Jail felony to a second degree.

IN Statute imposing increased Punishment for offender who had been Previously convicted of two felonies, terms "felony" and "state Jail felony" were mutually exclusive. Campbell v. State 49 Sw. 3d 874 Tex. crim. App. 2001

See State of Texas v. HARVEY LEE WEBB cite as 12 S.w. 3d 808: 2000 Tex. Crim. App. Lexis 24 NO. 1901-98

Also see State v. white, 959 S.w. 2d 375 (Tex. App.- fort Worth 1998 Pet. ref'd).

The Case Law and authority alleged above will clearly show the trial Court erred by using his Prior State Jail felony Conviction on Cause no: 08. D177X to enhance his Punishment to a second degree

Bledsoe argues that Under section 12.425(b) of the Texas Penal Code "felony" does not include State Jail felonies. And therefore it was error for the trial court to use a Previous State Jail felony Conviction to elevate his Punishment to a second degree felony.

Thus the Legislature has explicitly Provided for Certain forms of "Multiple enhancement" of state Jail felony. further, if the Legislature had intended that a NON-aggravated State Jail felony be eligible for enhancement Under 12.42 (a)(1) as well as 12.425(b), it is Likely that it would have clearly said so.

## PRAYER.

WHERE FORE, Premise, Considered, Appellant Prays that this Court will Not Continue this illegal restraint of Liberty. And Send a order to the 71st Judicial Court for a New Trial on Punishment that is Consistence with the offense charged.

Respectfully submitted
Jamie Lee Bledsoe

Page 6

ERROR # 2. APPellant Reply to the State.
## WARRANTS / CONSENTS IN QUESTION

There are three areas where the APPellant raises issues with respect to warrants/ consents in the instance case.

Going in the order in which they occurred,

(1) The APPellant Never Signed a Consent to search the motel Knowingly and voluntary.

## APPELLANT NEVER CONSENT TO THE SEARCH.

The Supreme court's requirement for Consent require that consent be voluntary and intelligent as Proved by a Preponderance of evidence. <u>Schneckloth v. Rustamonte</u> 412 U.S. 218 (1978). and the Texas Constitution's requirement that consent must be Proved by clear and convincing evidence. Tex. const., art 1. Sect. 9

The evidence at the suppression hearing clearly showed that APPellant Never consent to search the motel for any contraband concerning a offense.

### Suppression hearing

on Page 31, of the Court Reporter Record at the suppression hearing it will clearly show that officer Griffin advice the APPellant that he told him to sign consent and he would be able to retrive his brief case and bring it to him. See R-R. V. 2 of 7 Pg 31 Line 14-25

He adviced the APPellant that if the brief case had any contraband in it there would be charges. and if it did not he would bring it to him in Jail at which time he did with the return order See R-R. v. 2 of 7 Pg 12 Line 1-25

### ARMANIE Smith / owner of Room

Soon after Bledsoe was arrested he call the owner and adviced her to go to the room and retrive his Property See R-R.V. 2 of 7 Page-37- Line 1-25

mrs Smith came upon the officer inside the room already searching it See R-R-V. 2 of 7 Pg 37-38-39

IN order to Conceal there Search officer Griffin had officer Larry Smith to have Mrs Smith to sign a form for Bledsoe Property. She thraught She were Signing for the Property.
See R-R-V-2 of 7 Pg 37 Line 12-25 Pg 39 Line 1-25

## NO Plain View.

When officer Griffin was asked about the allegation he made about the shirt Laying in Plain view as soon as the door open, he was unable to show where this shirt was. R-R-V.2of7 Pg 21 Line 1-25 State's Exhibit 24 clearly show there were no shirt Laying in the door way.

The "valid fact" is that he alleged the shirt to be a white Polo shirt the Saw.

The shirt that was Seized after the officer went into the black bag was a greyish blue Polo shirt that was used for evidence Not white.

It made No sense why this officer would Need two consent form' And two affidavit for Search warrant' if he Saw this Shirt in Plain view.

Defendant's exhibit # 7 will clearly show that someone enter the room and went into the Concealed Black bag and threw some cloth' in the Cornor of the dresser in a effort to Show Plain view.

now" if this court would go back and view State exhibit 24 the initial entry of the room you will see those cloth' were not there.

now" go to the State' exhibit 27 and the defendant exhibit 3 You will now see the shirt that was used as evidence that the officer alleged he saw when the defendant first open the door.

## Invalid SEARCH WARRANT.

[The] affidavit' made by Sgt Darryl Griffin on the 23rd day of July 2012. And September 14th 2012 contained deliberate falsehood with reckless disregard for the truth. CATEs V. STATE. 120 S.W. 3d 352 (TexCR App 2003 where the defendant makes a substantial Preliminary showing that a false statement Knowingly and intentionally, or with reckless disregard for the truth was included by the affiant in the warrant affidavit and if the allegedly false statement is necessary to..

the finding of Probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

At the suppression hearing the Court was asked about the Contified Copy of the Affidavit for Search warrant. See R-R-V 2 of 7 - Pg. 14 Line 17-25.

This question was asked in a effort to reveal the truth Concerning the time the Consent form was alleged to be signed.

Officer Griffin alleged that the Consent form was signed at 11:20 and 11:21 (1) minute apart, When he was asked about how that happen" he answer that is Just Coincidence. See R-R-V. 2 of 7 Pg 26 Line 1-25

The Centified Copy of the Affidavit for Search warrant with the Stamped filed date on the search warrant would have Clearly Proved what time the Search was Conducted, before the alleged Concent or after.

Both Affidavit for Search warrant that was alleged On July 23rd 2012 was never Stamped filed dated by the clerk to validate there issuance. See STATE's EXHibit 3 Affidavit for Search warrant

* The Affidavit alleged Room 121 of motel 6 and the described item was a white Polo shirt
This affidavit Violated the Fourth Amendment all over

3th Affidavit.

This affidavit was Stamped filed On September 14th 2012, it contained deliberate false hood with reckless disregard for the truth.

In Side the body of the warrant the affiant alleged that On July 23rd 2012 he obtained the Search warrant and exercited the said warrant On Room 121 of motel 6 and Locate the White Polo shirt. See State EXHibit 4 filed September 14th 2012

while Serving this warrant to the defendant Officer Griffin Put in his scheme to validate the illegal search back On July 23rd 2012 by Having Bledsoe to Sign a Consent form that was blank. this form is the Consent form he used as the State's EXHibit.

page 9

Officer Hodges would testifie two the facts that officer Griffin had Bledsoe to sign the consent that she thraught was a search warrant Bledsoe had signed. See R-R-V 4 of 7 Pg-78-Line 1-25

when she was asked do you remember officer Griffin handing the defendant a form and having him to sign it she said yes! See R-R-V-4 of 7 Pg-78-Line 1-25 Pg-79- Line 1-25

Officer Hodges was lost about the document thinking that it was a search warrant, this court with knowledge know's that no suspect sign search warrant only magistrate judges and affiant's.

The consent form will not show a witness signature because officer Griffin knew his plan would not work if officer Hodges had sign it.

He then took the blank consent form with Bledsoe signature on it, and re made it out, that's why the two consent forms from Bledsoe and Amadie showed the time at 11:20 and 11:21 that he was question about at the suppression hearing.

He then signed his name and officer Boyd on the top of the form.

## Conclusion.

The fact's in the record will clearw show that there were no valid consent to search Room 108, there were never any plain view or any valid affidavits for search warrants that was obtained. Any and all evidence should have been suppress at the hearing, and the trial court abused there direction in allowing the evidence at the trial this case should be remand back with a order of acquittal.

Jamie Lee Bledsoe

## Certificate Of Service

I Jamie Lee Bledsoe, hereby Certify under Penalty Of Perjury that A true and correct copy Of APPellant Reply Brief has been Provided to DEBRA K. AUTREY: Clerk Of the Court Of Appeal Sixth APPellate District at the BI-STATE Justice Building at 100 NORTH STATE LINE AVENUE #20. TexARKANA. TEXAS 75501 On this day Of MAY 11th 2015.

Jamie Lee Bledsoe